REYNOLDS *v.* COX.

Separate suits upon two promissory notes. To the first suit, the defendant pleaded that the note was given to secure, in part, the purchase-money of a mill, and privileges and land thereto attached; that at the time the note was executed, the plaintiff falsely represented that the land embraced both banks of the stream on which the mill is situated, at or near the place where a county road crosses the stream, about 300 yards below where the dam then was, which is a most valuable location for a new dam, and without which, said privileges are of less value by 500 dollars; that he also falsely represented that the bolting-cloths were new, and that the mill, at the lowest stage of water, would grind from seventy-five to eighty bushels of grain per day; whereas, the plaintiff did not own both banks, &c., and the bolting-cloths were not new, and the mill would not grind more than twenty bushels per day—wherefore the consideration had failed. To the second suit he pleaded, 1. Substantially as to the first, except as to the representations touching the bolting-cloths and the quantity of grain, &c. 2. That the note was given in part payment for the mill, &c.; that before, and at the time of the sale, the plaintiff falsely represented that the main shaft and water-wheel were sound and new, when, in truth, they were not sound, but rotten, defective, and worthless—all of which the plaintiff knew, but which was unknown to the defendant; that the defendant was compelled, on account of the defects of the shaft and wheel, to replace them at an expense of 400 dollars, and that he was damaged by the loss of the use of the mill in the meantime 100 dollars—wherefore, &c. Reply in denial. The Court instructed the jury as follows: 1. That, "If the plaintiff pointed out the location of the land, and the description was false, the defendant would be entitled to an abatement of the price, * * * and the measure of that abatement would be what the land not included in the deed, but included in the misrepresentation, would cost, under a writ of *ad quod damnum*," &c. 2. That, "If it has been proven * * * that *Cox* owned the mill in question about two years, and, while he was owner, put in a new wheel, shaft, and bolting-cloth, his representations on these points would be true, and no subsequent rotting or destruction of the wheel, &c., would make him responsible to the defendant for damages." 3. That, "If *Cox* represented to *Reynolds*, on the sale, that the mill would grind from fifty to seventy-five bushels in a day, with the old dam, * * * in a dry time, and the mill would not grind so much, *Reynolds* would be entitled to damages for the difference between the value of a mill which would grind the quantity represented, and one which would grind a less quantity; unless *Reynolds*, before the purchase, had examined the mill and water, and had an equal opportunity of forming an opinion as to what quantity of grain could be ground in a day in a dry time." 4. "You may give damages, under the rule laid down in the former part of these instructions, for any defect in the grinding of the mill; or you may give damages for any representations as to the situation and boundaries of the land; but you cannot give damages both for the land and the grinding quality of the mill. It is obvious, from the evidence, that the grinding quality of the mill was dependent upon the quantity of water in the old mill-dam, and the ob-

ject of constructing a dam below the old one was, to provide a larger pool of water, so as to provide the mill a sufficient quantity of water. Now, if the defendant insists on the ground represented by the plaintiff to belong to him, to build his dam on, he would, under no circumstances, be entitled to claim an abatement on the notes for a defect in the grinding quality of the mill for a longer time than was reasonably necessary to obtain a title to the land included in the representations, and by that means supply the mill with an adequate quantity of water."

*Held*, 1. That there was no error in the first instruction, of which the defendant could complain.

2. That the second instruction was erroneous—the representations alleged in the plea being, that the shaft and wheel were sound, &c., and the allegation of the plea being, that they were unsound. Besides, it was the province of the jury to determine whether the representations were true or false.

3. That the third and fourth instructions were also erroneous. One branch of the defense was, misrepresentation in reference to the location, &c., of the land, and another was, misrepresentation touching the quantity of grain the mill would grind in a day, &c. There was no necessary connection between them, and the defendant might avail himself of either.

The jury are the sole judges of what facts are proven to them in a cause; and the Court ought not to express an opinion to them as to the sufficiency of the evidence, or to assume that facts involved in the cause are proven.

APPEAL from the *Henry* Circuit Court.

WORDEN, J.—The appellee brought two actions against the appellant, each upon a promissory note. The first was upon a note for 218 dollars. In the first suit there were two counts upon the bailment of some wheat; but these counts were afterwards non-prossed. This branch of the case has once been before this Court. *Cox* v. *Reynolds*, 7 Ind. R. 257. The other, was upon a note for 400 dollars. By agreement of parties, the two actions were consolidated. To the first, the defendant pleaded, amongst other things, that the note was given to secure, in part, the purchase-money of a certain mill, and mill privileges, and land thereto attached; that before, and at the time the note was executed, the plaintiff falsely represented that said land embraced both banks of the stream on which the mill is situated, at or near the place where a certain county road crosses the stream, about three hundred yards below the place where the dam, now belonging to said mill, is situate, and which forms the most valuable location for said mill-dam, and without which said mill privileges are of less value by 500 dollars; and that he, also,

*Nov. Term, 1858.*

REYNOLDS
v.
COX.

*Wednesday, December 8.*

falsely and fraudulently represented that the bolting-cloths were new, and that the mill, at the lowest stage of water in the stream, would grind from seventy-five to eighty bushels of grain per day; whereas, in truth and fact, the plaintiff did not own both banks of the stream, &c., and whereas, the bolting-cloths were not new, &c., and whereas, the mill, at the lowest stage of water, would not grind more than twenty bushels of grain per day—all of which the plaintiff well knew; wherefore the consideration of the note had failed.

There was also a plea of set-off.

To the second suit, the defendant answered—1. Substantially, as to the first action, except the representations concerning the bolting-cloths, and the quantity of grain the mill would grind; and 2. That the note was given in part payment for the mill, &c.; that before, and at the time of the sale, the plaintiff falsely and fraudulently represented to the defendant that the main shaft and water-wheel in said mill were sound and new, when, in truth and fact, the said shaft and wheel were not sound, but rotten, defective, and worthless—all of which the plaintiff well knew, but which was unknown to defendant; that defendant was compelled, on account of the defect of the shaft and wheel, to replace the same at an expense of 400 dollars, and that he suffered damages, by the loss of the use of the mill in the meantime, to the amount of 100 dollars; wherefore, &c.

Replication in denial.

The cause was tried by a jury, and a verdict returned for the plaintiff for 541 dollars, 8 cents, on which judgment was rendered, over a motion for a new trial. The Court instructed the jury that, "If the plaintiff pointed out the location of the land, and that description was false, the defendant would be entitled to an abatement of the price to be given, and the measure of that abatement would be what the land not included in the deed, but included in the misrepresentation, would cost, to obtain it under a writ of *ad quod damnum*, or other means equally cheap and expeditious."

We see no error in this charge, of which the defendant can complain.

In this case, when it was before in this Court (*Cox* v. *Reynolds*, *supra*), it was said that, "where the vendee prefers to keep the land as it is, and to set up the misrepresentation in avoidance, as to part of the price, we think he has not, in any event, a right to claim an abatement of more than the value of the land not conveyed."

The defendant asked several instructions on this point, but we think the substance of them given in the above charge.

The Court also charged as follows: "If it has been proven to your satisfaction that *Cox* owned the mill in question about two years; and while he was the owner, if he put in a new wheel, shaft, and bolting-cloth, his representations on those points would be true, and no subsequent rotting or destruction of the wheel, shaft, or bolting-cloth would make him responsible to the defendant for damages."

This charge is erroneous, and should not have been given. The representations alleged in the plea were, that the shaft and wheel were sound and new, and it is averred that they were unsound and defective. If they had been put in only two years, they might have been substantially new, but it does not follow that they were sound. Besides, it was the peculiar province of the jury to determine whether the plaintiff's representations were true or false.

The following charges were given:

"If *Cox* represented to *Reynolds*, on the sale, that the mill would grind from fifty to seventy bushels in a day, with the old dam, in its then condition, in a dry time, and the mill would not grind so much, *Reynolds* would be entitled to damages for the difference between the value of a mill which would grind the quantity represented, and one which would grind a less quantity; unless *Reynolds*, before the purchase, had examined the mill and water, and had an equal opportunity of forming an opinion as to what quantity of grain could be ground in a day, in a dry time."

"You may give damages, under the rule laid down in the former part of these instructions, for any defect in the grinding of the mill, or you may give damages for any representations as to the situation and boundaries of the land; but you cannot give damages both for the land and the grinding quality of the mill. It is obvious, from the evidence, that the grinding quality of the mill was dependent on the quantity of water in the old mill-dam, and the object of constructing a dam below the old one was, to provide a larger pool of water, so as to provide the mill a sufficient quantity of water. Now, if the defendant insists on the ground represented by the plaintiff to belong to him, to build his dam on, the defendant, under no circumstances, would be entitled to claim an abatement on the notes for a defect in the grinding quality of the mill for a longer time than was reasonably necessary to obtain a title to the land included in the representations, and by that means supply the mill with an adequate quantity of water."

These instructions are also wrong. One branch of the defense set up, is a misrepresentation in reference to the location and boundaries of the land belonging to the mill privilege, and another is a misrepresentation in reference to the quantity of grain the mill would grind in a day, at the lowest stage of water. The defendant was entitled to avail himself of either or both of these branches of defense, so far as the facts would warrant. So far as the pleadings show, they have no necessary connection with each other. Suppose the fact assumed by the Court to be true, "that the grinding quality of the mill was dependent on the quantity of water in the old dam, it does not, therefore, follow, that when the land in controversy should be obtained, and the new dam built, the mill would perform equal to the representations. If an abatement is made on the notes for the cost of procuring the land, the amount, if anything, to be allowed for the other misrepresentations, should be precisely what it would have been had the representations as to the lines and boundaries of the land been correct.

When an abatement is made of the cost of procuring

the land in dispute, there is an end of that question. Compensation has been made. The plaintiff stands in just the position he would have occupied had the representations been true in respect to the land. Then, on the supposition that those representations were true, it was exclusively for the jury to determine whether the representations in respect to the grinding of the mill were true or false, and to give or withhold damages accordingly.

In addition to the fact assumed by the Court, that it was "obvious from the evidence that the grinding quality of the mill was dependent upon the quantity of water in the old dam," the charge virtually assumes other facts which (if involved in the case at all,) should have been left to the jury, viz.; 1. That if the defendant insisted upon the land represented to belong to the property, it was his duty, for some reason, to build a new dam in order to make the mill grind in a manner equal to the representation. 2. That by building the new dam, there would be an adequate supply of water, for the purpose of grinding as represented. 3. That with such supply, the mill would grind as represented.

If there was no proof on these points, they certainly should not have been assumed, and if there was proof, it was exclusively for the jury to determine whether or not they were made out.

That the jury are the sole judges of what facts are proven to them in a cause; and that the Court ought not to express any opinion to them as to the sufficiency of the evidence, or assume that facts involved in the case are proven; are propositions well settled.—*Hackleman* v. *Moat*, 4 Blackf. 164.—*Conaway* v. *Shelton*, 3 Ind. R. 334.—*Ball* v. *Cox*, 7 *id*. 453.

For these reasons, we are of opinion that the judgment ought to be reversed.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded for a new trial.

*N. H. Johnson* and *W. Grose*, for the appellant (1).

*O. P. Morton* and *M. L. Bundy*, for the appellee.