IOWA RY. & LIGHT CO. v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Eighth Circuit.    March 28, 1917.)

No. 4746.

1. RAILROADS ⬳71—RIGHT OF WAY—GRANT—CONSTRUCTION.
    An instrument granted to a railroad company a right of way across certain lands, reserving the use of all of such lands except that portion actually used and occupied by the railroad company. The company constructed a single track, but cut grass and willows on the entire statutory width, used substantially all the ground within such width for erecting telegraph poles and storing materials, and for 32 years returned it for taxation and paid taxes thereon, while the grantor never even availed himself of the right to use those portions not actually occupied by the company. Held, that the grant was of a right of way 100 feet wide, the maximum width allowed by statute, and not merely a strip sufficient in width for a single track; the provision as to the right to use parts not occupied by the railroad company constituting a reservation and not an exception.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 167.]

2. DEEDS ⬳138—"RESERVATION" AND "EXCEPTION"—DISTINCTION.
    An "exception" is a withdrawal from the effect of the grant of some part of the thing granted which is in existence and included under the terms of the grant; while a "reservation" is something arising out of the thing granted not then in existence, or some new thing created or reserved, issuing out of the thing granted and not a part of the thing itself.
    [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 456.
    For other definitions, see Words and Phrases, First and Second Series, Exception; Reservation.]

3. RAILROADS ⬳71—RIGHT OF WAY—GRANT—RESERVATIONS.
    The reservation in a grant of a railroad right of way of the right to use such parts thereof as were not actually occupied by the railroad company would not extend beyond the grantor's own life, in the absence of words of limitation and inheritance.
    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 167.]

Appeal from the District Court of the United States for the Northern District of Iowa; Henry T. Reed, Judge.

Suit by the Iowa Railway & Light Company against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

F. F. Dawley, of Cedar Rapids, Iowa (John A. Reed, William Smyth, and Dawley, Jordan & Dawley, all of Cedar Rapids, Iowa, on the brief), for appellant.

John N. Hughes, of Cedar Rapids, Iowa (C. R. Sutherland, of Cedar Rapids, Iowa, on the brief), for appellee.

Before CARLAND, Circuit Judge, and RINER and MUNGER, District Judges.

RINER, District Judge. [1] This is a suit brought by the Iowa Railway & Light Company, hereafter referred to as the plaintiff, against the Chicago, Milwaukee & St. Paul Railway Company, here-

after referred to as the defendant, to establish its title to a strip of ground claimed by the defendant as a right of way across the northeast quarter of section 21, township 83 north of range 7 west of the Fifth principal meridian, now within the corporate limits of the city of Cedar Rapids, Iowa, and to enjoin the defendant from constructing a track in addition to its main track on the strip of ground in controversy. The right of way is a circular strip of land along the southwest bank of what is locally known as the Slough or Cedar Lake. This slough or lake is not a meandered body of water and was subject to pre-emption and patent from the United States. Both parties to the litigation derived title from the same source, the grant to the defendant being prior in time. The only question to be determined is the width of the strip of ground included within defendant's right of way across these lands, it being conceded that the defendant had a right of way and that the plaintiff owns the land up to the right of way, whatever its width. The contention of the plaintiff is that the right of way includes a strip of land sufficient in width only for the reasonable and necessary maintenance of a single track; whereas, it is insisted by the defendant that its right of way includes a strip of land 100 feet in width, 50 feet on either side of the center line of its main track, the maximum width allowed by the statute of Iowa, without the consent of the owner of the land. The right of way across this land was granted to the Dubuque Southwestern Railroad Company by the then owner in 1864, as evidenced by the following instrument:

"Rec'd Marion, Linn County, Iowa, Sept. 26th, A. D. 1864, from the Dubuque Southwestern Railroad Co., the sum of five hundred and fifty-seven dollars, together with a certificate of thirty shares of the common stock of the Dubuque Southwestern Railroad Co. of one hundred dollars each No. 14, and dated Aug. 8th, A. D. 1864, which I hereby accept in full satisfaction in behalf of myself and Calvin Graves for the right of way of said Dubuque Southwestern Railroad Co., over and across the following described lands and lot belonging to us, to wit: The northwest quarter of section fourteen (14) and the north half of the southwest quarter of section fifteen (15) and the northeast quarter of section twenty-one (21), all in township eighty-three (83) north, of range seven (7), west of the 5th P. M., also lot No. five in block No. fifty-four (54) in the city of Cedar Rapids, Linn county, Iowa, reserving the use of all of the above-described lands and lot except that portion of the same which is actually used and occupied by said railroad Co.      Geo. Greene."

This instrument was duly acknowledged and recorded. In 1865, the Dubuque Southwestern Railroad Company constructed a line of railroad consisting of a single track across the lands in dispute and operated the same until 1878, when the defendant purchased the road and has operated it ever since.

[2] That all of the rights acquired of the Dubuque Southwestern Railroad Company under the instrument above set out passed to the defendant at the time it purchased the road is not controverted. This brings us at once to consider what the parties intended to pass and what actually did pass under the terms of the grant. This is to be gathered from the language employed in drafting the instrument and from the acts of the parties. In determining the proper construction to be given to the grant itself, it is well to keep in mind the distinction

between an "exception," where the grantor withdraws from the effect of the grant some part of the thing itself which is in existence, and included under the terms of the grant, and a "reservation," which, though made to the grantor, is something arising out of the thing granted not then in existence, or some new thing created or reserved, issuing out of the thing granted and not a part of the thing itself.

[3] The instrument first grants the right of way and then reserves, not a designated portion of the land granted, but only a right to use such parts of it as are not actually used and occupied by the railroad company. This constitutes a reservation and not an exception, for it is something arising out of the thing granted and not then in existence. In other words, it is a new right created and to be exercised by the grantor in the future, and, there being no proper words of limitation and inheritance, the right would not extend beyond the grantor's own life.

From the language of this instrument we think it clearly appears that it was the purpose and intention of the parties to convey more than a strip of land sufficient in width for a single track; otherwise there would be no occasion for the reservation, as the entire strip granted would be occupied by the railroad company. The width not being specified in the grant, we think it reasonable to hold that by the use of the words "the right of way" the width of 100 feet, authorized by the statute, was intended. Indeed, this is the usual presumption in cases where the width is not specified in the contract or conveyance.

In 2 Elliott on Railroads, 434, it is said:

"There is much reason for holding that, where the width is not specified and there is nothing either in the contract or in the acts of the parties to indicate that less than the statutory width was granted, it will be presumed a right of way to the full statutory width was intended."

And the Supreme Court of Iowa, in the case of Canning Co. v. B., C. R. & N. Ry., 120 Iowa, 724, 95 N. W. 195, after noticing the cases of Campbell v. Railway Co., 110 Ind. 490, 11 N. E. 482, Prather v. Western Union Tel. Co., 89 Ind. 501, and Jones v. Railway, 144 Pa. 629, 23 Atl. 251, said:

"It is clear from these decisions that defendant's predecessor must be presumed to have acquired a right of way 100 feet wide, in establishing the road. That was prior to the conveyance by Hull to the wagon company. The tract of land owned by him was servient to the easement of the railroad company, and, of course, he could not deprive it of any part of the right of way by sale to others. But a railroad company is not bound to acquire a right of way of any particular width, nor to lay its main track in the center of that which is acquired. While ordinarily it is to be presumed to have obtained a way of the maximum width, and to have intended to have its track in the center, this is merely a naked assumption, casting the burden of proof on any one asserting the contrary, and may be overcome by evidence rebutting the inference. As to width, this must necessarily be so, for ordinarily a small portion of the right of way is at first made use of, and the remainder only as necessity demands. Hence actual possession of the portion of the way farthest from the track is seldom taken prior to the construction of fences. But this very fact should make courts cautious in fixing such boundaries, and exact satisfactory proof in order to defeat the assumption." Babcock v. Western Railroad Co., 9 Metc. (Mass.) 553, 43 Am. Dec. 411; Brainard v. Clapp, 10 Cush. (Mass.) 6, 57 Am. Dec. 74; Hargis v. K. C., C. & S. Ry., 100 Mo. 210, 13 S. W. 681.

So far as the record in this case discloses, the grantor never manifested an intention to give less than the railroad company could acquire under the statute. He did not even avail himself of the reservation to use such portions of the right of way as was not actually used and occupied by the railroad company. Neither has the railroad company sought to limit its appropriation to any less than the maximum amount authorized by law; on the contrary, it has cut the grass and willows on the entire right of way and at different times has used substantially all the ground within the right of way for the purpose of erecting telegraph poles, storing ties, lumber, and other material used in the operation and maintenance of the road, and for 32 years has annually returned for the purpose of assessment for taxation, and paid taxes on, this strip of ground for its full width of 100 feet. So it cannot be said that there is anything in the acts of the parties to indicate that anything less than the statutory width was intended to be granted.

In view of the conclusion reached as to the proper construction to be given to the grant itself, it becomes unnecessary to discuss the other questions suggested by counsel in their briefs and at the argument.

Decree affirmed.